## Hamilton, Appellant, *v.* Kirby.

*Contract—Sale—Breach of contract—Purchase of substituted goods in the market.*

Where a seller fails to deliver an article contracted for, the purchaser has a right to go into the market and supply himself on the best terms he can, and then to look to his defaulting vendor to make up any loss from the breach of contract; and if the exact article cannot be obtained with reasonable effort the purchaser may take the best substitute within reach; but what is the best substitute is a question of fact which if disputed must go to the jury, and on this question, ordinarily the general usage of the business, if there is such a usage, is controlling evidence.

A purchaser in procuring a substitute for goods not delivered, cannot charge his vendor for more than a loss which was not reasonably avoidable. Therefore he must buy the substitute on the best terms obtainable, and that means prima facie, at the market price.

In an action by a vendee against his defaulting vendor for failure to deliver peeled poplar, an affidavit of defense is sufficient which avers that the purchase of poplar wood with the bark on as a substitute for peeled poplar, is contrary to the usage of the trade, and that the sum paid by the plaintiffs for the substitute was above the market price. In such a case, as the defense is to the entire claim, the affidavit is not required to state the defendant's version of the market price.

Argued March 28, 1901. Appeal, No. 41, Jan. T., 1901, by plaintiffs, from order of C. P. No. 1, Phila. Co., Dec. T., 1899, No. 1012, discharging rule for judgment for want of a sufficient affidavit of defense in case of Charles L. Hamilton, Wilbur F. Hamilton and Edwin E. Hamilton, trading as W. C. Hamilton

& Sons, v. William S. W. Kirby and Frank H. Hawkins, trading as Kirby & Hawkins. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit for breach of contract.

From the record it appeared that plaintiff claimed to recover from defendant $4,511 for loss resulting from failure of defendants to deliver a quantity of poplar wood to plaintiffs under a contract of sale. The contract called for peeled poplar. The defendants filed an affidavit of defense which was in part as follows :

The defendants never agreed to furnish poplar wood with the "bark on" and never consented with the plaintiffs that they should go into the market and buy wood such as they had not agreed to furnish them, and the defendants never allowed the plaintiffs the privilege of going into the market and buying the poplar wood with the "bark on." The purchase of poplar wood with the "bark on" to take the place of and be substituted for the peeled poplar wood is absolutely new to the trade, not in accordance therewith, and entirely contrary thereto.

Deponent avers that $6.75 per cord for poplar wood with the "bark on" was an extraordinary price and far above the market price on December 30, 1899, the date of the alleged purchase.

The average price of cord wood, which is solid wood with the "bark on" and usually consists of chestnut, oak, poplar, and other woods, is from $3.00 to $3.50 per cord, delivered on a corresponding freight rate to Philadelphia, Pa. Poplar wood is no more expensive than chestnut or oak wood. A charge of $2.00 per cord for peeling the said wood is an excessive price for the work, inasmuch as the entire cost of felling the timber, sawing into lengths, splitting the wood to proper size, and peeling the bark costs from seventy-five cents to one dollar per cord, and if the wood with the "bark on" had been bought by the plaintiffs at the market price, the plaintiffs would have obtained their wood at less than their contract price with the defendants, and consequently could not have any claim against the defendants under the said contract.

Deponent avers that the plaintiffs, in their statement of claim, acknowledge that there was no such wood in the market as

"Virginia white poplar wood," as called for in the contract, and therefore it was a physical impossibility for defendants to purchase the same.

The defendants deny the right of the plaintiffs to go into the market and purchase wood not called for in the said contract between the plaintiffs and defendants.

The proper season for securing peeled poplar wood is in the spring season, and December 30, the date of the alleged purchase, is the season of the year when wood is highest in price and most difficult to obtain.

The court discharged a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Jere J. Crowley,* with him *Thomas W. Barlow,* for appellants. —The appellants, under the circumstances, had the right to purchase in the market poplar wood with the bark on as a substitute for poplar wood peeled, which the appellees contracted to deliver, and charge them with the difference between the market price and cost of peeling the wood with the bark on, and the contract price of peeled wood: Benjamin on Sales, sec. 877; Theiss v. Weiss, 166 Pa. 16; Hinde v. Liddell, L. R. 10 Queen's Bench, 265.

Defendants' allegation as to market price paid by plaintiffs for substituted wood is not sufficiently averred: Port Kennedy Slag Works v. Krause & Sons, 5 Pa. Superior Ct. 622; Griel v. Buckius, 114 Pa. 190; Woods v. Vankirk, 5 Pa. Dist. Reps. 135.

*Joseph W. Shannon,* for appellees, was not heard, but cited in his printed brief: Carey v. Bright, 58 Pa. 82; Guillon v. Earnshaw, 169 Pa. 469; Third Reformed Dutch Church of Phila. v. Jones, 132 Pa. 462; Bryson v. Home for Disabled and Indigent Soldiers, etc., 168 Pa. 352.

OPINION BY MR. JUSTICE MITCHELL, May 27, 1901:

The affidavit set forth two defenses, first, that the purchase of poplar wood with the bark on, as a substitute for peeled poplar, is contrary to the usage of the trade, and secondly, that the

sum paid by the plaintiffs for the substitute was above the market price.

Where the seller fails to deliver an article contracted for, the purchaser has a right to go into the market and supply himself on the best terms he can, and then to look to his defaulting vendor to make up any loss from the breach of the contract. And if the exact article cannot be obtained with reasonable effort the purchaser may take the best substitute within reach. But what is the best substitute is a question of fact which if disputed must go to a jury; and on this question, ordinarily, the general usage of the business, if there is such a usage, is controlling evidence. The affidavit of defense avers that the substitution of poplar with the bark on for peeled poplar was "entirely contrary" to the usage of the trade. That raised a question for the jury.

Secondly, the purchaser in procuring the substitute cannot charge his vendor for more than a loss which was not reasonably avoidable. Therefore he must buy the substitute on the best terms obtainable, and that means prima facie, at the market price. The price paid by the plaintiffs being disputed by the affidavit, raised another question for the jury.

The affidavit was not required to state the defendants' version of the market price. Where the defense is pro tanto only, the affidavit must state the exact extent to which it goes, so as to give the plaintiff the opportunity, if he desires, of accepting the defendant's version and taking judgment for the amount admitted : Cosgrave v. Hammill, 173 Pa. 207. But in this case the defense set up goes to the entire claim, not only upon the questions already noticed but also on breach of contract in the first instance by plaintiffs in the measurement of wood delivered, and other matters not necessary to discuss now.

Judgment affirmed.