H. H. Lane and Thomas R. Johnston, Assignee of H. H. Lane, *v.* Penn Glass Sand Co., Lim't'd, Appellant.

*Affidavit of defense—Contract—Performance.*

In an action to recover on a contract for furnishing and erecting machinery, it appeared that the contract specifically provided that "the said machinery, etc., including, and intending to include all things necessary and needful for the setting up and furnishing a complete apparatus for crushing, washing, conveying and drying sand to the full capacity herein guaranteed by the said first parties, the parties of the first part agree to furnish all the above machinery and send one man to put up in complete working order and start said machinery. And the said first parties further agree to guarantee said grinding and washing machinery when put up to

have a capacity of eight tons per hour and the dryer to have a capacity of four tons per hour." The defendant filed an affidavit of defense expressly denying that the contract was substantially performed, and averring that the " mill, plant or machinery was not erected or constructed in accordance with the terms of said contract, but in such an unworkmanlike and defective manner as to cause the defendant great loss and damage ; " that the same was " so defectively constructed in workmanship and of such defective material as to render the said plant almost wholly useless for the purpose for which it was intended." The affidavit of defense further specified wherein plaintiffs failed to comply with their contract, and averred " that without taking into consideration the injury defendant sustained by reason of the defective work done by the mill, owing to faulty material and construction, and failure of the plaintiffs to perform their contract, the defendant sustained damages to more than the amount alleged to be due on the original contract," etc. *Held,* that the affidavit of defense was sufficient to prevent judgment.

Argued Oct. 8, 1895. Appeal, No. 54, Oct. T., 1895, by defendant, from order of C. P. Venango Co., April T., 1894, No. 25, making absolute a rule for judgment for want of an affidavit of defense. STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL and FELL, JJ. Reversed.

Assumpsit on a contract for furnishing and erecting machinery and mill plant.

Plaintiffs filed the following statement:

H. H. Lane, the assignor, and one of the plaintiffs as above, being duly sworn, says that the causes for which the above action has been brought are as follows, to wit: On March 30, 1893, the above plaintiffs entered into an agreement with the said Penn Glass Sand Company, a copy of which agreement is hereto attached and made part hereof, for the purpose of erecting for the said Glass Sand Company, at Scrubgrass, Venango county, Pennsylvania, certain machinery, as is in said attached agreement set forth, for the purpose of crushing sandstone, washing the same, drying the same, and otherwise preparing glass sand for the market, and for the purpose of making glass therefrom ; the said machinery to consist of a chaser mill, screw washers and boxes, conveyors, dryer shell, engine, belting, etc., as per the contract attached. That the said machinery, etc., was furnished as provided by the contract, and put in place in such a workmanlike manner as to do the work required in the crushing, washing, drying and making the sand ready for the

market. That not only the machinery, but also the labor required in connecting and placing the same, was of the best, and in a workmanlike manner done, and was accepted by the managers of said Glass Sand Company after it had been properly tested by the plaintiffs. That thereupon the sum of $3,125 became due and owing plaintiffs, as is provided in said contract, and defendant paid thereon the sum of $1,000, as provided by the contract, to which, together with other sums paid to the plaintiffs' employees, $35.00, and for freight, $77.40, as appears by the bill hereto attached and made part hereof, made a total payment of $1,112.40, and leaves a balance due plaintiffs of $2,012.60 upon that account, no part of which has been paid, and no further offsets are due defendant.

Plaintiffs further say, that defendant not having their part of the plant in such a state of completion that plaintiffs could proceed with their work, and without any cause or blame that could be attributable to plaintiffs, as is provided in the attached contract, plaintiffs were delayed in their work in putting in their machinery, etc., from July 18, 1893, to January 18, 1894, one hundred and eighty days, at $1.00 a day, in all $180, which amount is due and owing plaintiffs, no part of which is paid.

And further, that, as is provided by the said contract, the said Glass Sand Company so delayed and kept back the performance of their part of the said contract, that the employees of the plaintiffs were delayed in their work, and are entitled to the $4.00 a day as fixed by the contract, and their board, etc., to wit: One man from August 8, 1893, to August 21, 1893, at $4.00 and his board $13.00 and his expenses there and return $15.00, in all $80.00; also a man from October 10, 1893, to November 15, 1893, at $4.00 and his board $35.00, and his expenses there and return $15.00, in all $190; also one of the plaintiffs, H. H. Lane, was sent for by the said Glass Sand Company to come to their said plant, as hereinafter set forth, to do extra work, which was not in any way connected with the said contract, and were to pay him such sum as his services were worth, and which plaintiffs claim he is entitled to, as follows: Three days in August, 1893, at $10.00, his board paid out $3.00, and his expenses $15.00, in all $48.00; six days in September, 1893, at $10.00, his board $8.00, and expenses paid $15.00, in all $81.00; three days in October, 1893, at $10.00,

his board $3.00, his expenses, $15.00, in all $48,00; the said expenses being for going and returning. Further, that defendant failing to pay plaintiffs the second and third payments as provided by the said contract, and without any fault of plaintiffs, they are entitled to interest on the sum of $1,000 from the 18th day of August, 1893, and on the balance of the money due, $1,125 from the 18th day of November, 1893. Further, plaintiffs sent to defendant as extra, four plates for upright shaft, on January 5, 1894, $4.00. Deponent therefore says that plaintiffs are justly entitled to receive from defendant, the sum of $2,678.85, with interest thereon from the 18th day of January, 1894. All of which deponent says he believes to be true and correct, and expects to be able to prove upon trial of the above case. The articles of agreement were as follows:

"The parties of the first part agree to furnish the following machinery, viz: One 6' 6" heavy chaser mill with counter shaft and driver pulley, also, the frame for same of 12" × 12" oak, with braces, rods, etc.; also, one 6 ft. revolving screen with automatic tailings return; also, four sectional screw washers 17" × 10' (steel shafts) with wooden screw boxes, framing, shafting, gearing and pulleys, complete ready to attach belt; also, one 30 ft. drag conveyer with 14" ply rubber belt and 14" steel scrappers, adjustable take-up boxes, pulleys, gearing, shafting and belt; also, all the water piping, valves and fittings to convey water to above machines (not including main pipe outside of building); also, all pulleys, shafting and belting, including main belts to engines; also, one revolving dryer 28" × 18' with casings, fire-doors, ash-doors, grate bars, tie rods, smoke stack and guy rods; also, one 25' × 12" screw conveyor to carry sand to dryer, and one bucket elevator to carry sand from dryer, with the necessary pulleys, shafting and belting, with one 10 H. P. "Lane" engine to drive the same, including pipes to outside of building. The said machinery, etc., including and intending to include all things necessary and needful for setting up and furnishing a complete apparatus for crushing, washing, conveying and drying sand to the full capacity herein guaranteed by said first parties. The parties of the first part agree to furnish all the above machinery, f. o. b. cars at Kennerdell station on the "Allegheny Valley Railroad," Venango Co., Pa., and to send one man to put up in complete working order and start

said machinery. The said first parties further agree to guarantee said grinding and washing machinery when put up to have a capacity of eight tons per hour, and the dryer to have a capacity of four tons per hour.

In consideration of the said premises the said second parties agree to pay to the said first parties the sum of $3,125, to be paid as follows : One third to be paid on the delivery of the above machinery and material on the premises at or near Kennerdell station on the Allegheny Valley Railroad. One third within 30 days after the completion of said plant by said first parties and satisfactory test of the same ; but if said test is delayed by reason of second party not having completed its plant for conveying sand to said mill, or any other cause not attributable to first parties, said second parties shall pay said first parties $1.00 per day for such delay until said test is made, but in no event shall said second payment be delayed more than 60 days from completion of first parties' contract. When second payment is made, note at 90 days shall be given for last payment, dated 30 days after completion of work.

It is further agreed and understood that the said second party is to do all the excavating, furnish all materials for masonwork, and do the masonwork, and in event that the said man furnished by said parties should be detained in constructing said work, by engines or other machinery (not furnished by parties of the first part) not being ready, that then said second party shall pay to said first parties the sum of $4.00 per day and the boarding of said men while thus detained.

Said first parties to commence work at once and have the same completed and ready for test not later than the 15th day of June, A. D., 1893. If said first parties do not carry out this contract as herein agreed, said second party shall be at liberty to contract with other parties as though this contract had not been made."

## BILL OF ITEMS.

1895.                              Dr.

May 23,        To 1-6' 6" chaser mill, with frame
P. R. R. Car,  1-6' revolving screen,
    15109      4 sectional screw.washers, 17"
               10', with wooden screw boxes,
               1-30' drag conveyor,
               1 lot of pulleys, gearings and shaft-
                   ing,
               1 dryer shell,
P. R. R. Car,  2 screw conveyors,
    17103      1 engine,
               Pulleys, shafting, belting and one
                   lot of castings, all as per con-
                   tract                                   $3,125.00

       2.  Delay from July 18, '93, to Jan'y
               18, '94, $1.00 per day,                        180.00
       3.  1 man, Aug. 8, '93, to Aug. 21, '93,
               $4.00 per day,                                  52.00
       4.  Expense of same, car fare, $15.00,
               board $13.00                                    28.00
       5.  1 man, Oct. 10, '93, to Nov. 15, '93,
               $4.00 per day,                                 140.00
       6.  Expense, $15.00, board, $35.00                      50.00
       7.  H. H. Lane, 3 days, $10.00                          30.00
       8.  Expense, $15.00, board $3.00                        18.00
       9.  H. H. Lane, 6 days, $10.00                          60.00
      10.  Expense, $15.00, board, $6.00                       21.00
      11.  H. H. Lane, 3 days, $10.00                          30.00
      12.  Expense, $15,00, board, $3.00                       18.00
      13.  Int. on $1,000.00 for 2 mos., Jan'y
               18, '94,                                        10.00
1894. 14.  Int. on $1,000.00 for 5 mos., Jan'y
               18, '94,                                        25.00
Jan'y 5, 15. 4 plates for upright shaft                         4.00
                                                           $3.791.00

                              Cr.

1893.
June 23,       By cash,                        $1,000.00
July 17,       By cash paid J. S. Campbell,        25.00
               By cash paid  "        "            10.00
               Freight on P. R. R. Car, 15109      40.20
                                        7103       37.20    1,112.40

                                                           $2,678.60
                         Probate,                                .25
                                                           $2,678.85

Defendant filed the following affidavit of defense:

B. F. Hamilton, being duly sworn, deposes and says, that he is the secretary and treasurer of the above named company, defendant; that the said defendant has a just and legal defense to the whole of the plaintiffs' claim, filed in the above case, the nature and character of which is as follows: That the mill, or plant, and machinery, agreed to be put up for said defendant under the contract, a copy of which was filed with plaintiffs' copy of claim, was not erected or constructed in accordance with the terms of said contract, but in such an unworkmanlike and defective manner as to cause the defendant great loss and damage, more specifically stated hereafter; that when plaintiffs alleged the said plant was completed, and examination and trial of same by defendant at once disclosed the fact that the said mill and machinery were not in accordance with the terms of the contract, but so defectively constructed in workmanship and of such defective material as to render the said plant almost wholly useless for the purposes for which it was intended, and of these defects the plaintiff was at once notified, and requested to come on, and do whatever was necessary to fulfill the plaintiffs' contract and make the plant useful for the purposes for which it was erected, and all of the expenses incurred by the plaintiffs, for which charges have been made by the plaintiffs in copy of claim, between the first item and the three last items, were incurred by the plaintiffs in an unsuccessful attempt by the plaintiffs to fulfill plaintiffs' contract, and the said defendant is not liable to plaintiffs for any part of any one of said items; that the main crusher of the said mill was so defectively constructed that in running it failed to crush and wash the sand properly, and by not being held in place threatened the destruction of that part of the mill; that the troughs for washing the sand were so small that they would not allow the dirty water to pass back, but carried it over with the sand, and had to be replaced by new ones, and the cost of making the repairs and the delay cost the company defendant six or seven hundred dollars. That the dryer was so defectively constructed that coal could not be used at all in running, and the defendant was put to great inconvenience and cost in supplying oil as a fuel, although coal was intended to be used; that the plaintiffs guaranteed the dryer to have a capacity of four tons per hour,

but with the best fuel that could be used and with the utmost care and expense the greatest capacity of the dryer was three tons per hour, and it could not be depended upon to dry this amount, and to bring the drying capacity of the plant up to four tons per hour another dryer will have to be put in, at a cost of seven or eight hundred dollars; that while the plaintiffs were attempting to make repairs and while the defendant was making repairs, the men were kept idle and hindered, and delayed in performing their work, to the damage of the defendant in the sum of several hundred dollars; that without taking into consideration the injury the defendant sustained by reason of the defective work done by the mill, owing to faulty material and construction and failure of the plaintiffs to perform their contract, the defendant sustained damages to more than the amount alleged to be due on the original contract, and this defendant expects to be able to show on the trial of this case, and further deponent saith not.

Pending a rule for judgment for want of a sufficient affidavit of defense, defendant filed the following supplemental affidavit of defense.

B. F. Hamilton, being duly sworn according to law, doth depose and say that he is the secretary and treasurer of the Penn Glass Sand Company, defendant, and that the affidavit of defense heretofore filed in said cause and sworn to by him was made by him for and on behalf of the said defendant company, and that he is and at the time of making said affidavit was cognizant of the facts therein stated; that deponent makes this supplemental affidavit of defense likewise for and on behalf of said defendant company, and is likewise cognizant of the facts herein stated.

Deponent further saith, that it is not true as alleged in the affidavit of H. H. Lane, filed of record herein as the statement of claim, that the machinery mentioned in the contract attached to said affidavit and the workmanship in connecting and placing the same were the best, and that the same was accepted by the managers of the defendant company after it had been properly tested by the plaintiffs. That both the machinery and the construction thereof were inferior; that the said machinery will not and never did perform the work which by the terms of their contract the plaintiffs guaranteed it would perform; that the

work of putting the same in place was done according to plans furnished by plaintiffs and under the direction of their agent; that such agent was not skilled in and did not understand the business of erecting and placing such machinery, or wholly neglected his duty, and when plaintiffs and their agent left the said machinery it wholly failed to perform the work as guaranteed, both by reason of defective machinery and defective placing and connecting of the same.

That the said machinery was not by the said plaintiffs in any way tested, except to attempt to and fail to make the same work as by the terms of the said contract it was agreed that it should work.

Deponent further saith that the one thousand dollars paid on account of said contract was paid when the material arrived at the premises at or near Kennerdell station in accordance with the terms of the contract, and long before the alleged completion of the work by the plaintiffs. That by reason of the improper placing and connecting of the said machinery under the direction of the plaintiffs and their agent, defendant was compelled to reset, rearrange and replace much of the machinery at great expense.

That the said H. H. Lane was sent for by the defendant company as set forth in his affidavit, but he was requested to come only for the purpose of completing and finishing the work which the plaintiffs by their contract had agreed to do and perform, and not for the purpose of doing extra work, as alleged in his affidavit, and defendant never agreed to pay him for so coming or for any time of services rendered by him any sum whatever, and the extra plates furnished by plaintiffs and charged for by them were so furnished under and pursuant to their contract, and in place of other and defective or worthless plates theretofore furnished. That by reason of the failure of plaintiffs to complete their work according to the terms of their contract, they are not entitled to any interest.

Deponent further saith, that by reason of the failure of the plaintiffs to file a statement of claim herein, and a copy of the plaintiffs' book accounts as required by law and the rules of court, they are not entitled to judgment herein for want of either an affidavit of defense or a sufficient affidavit of defense, as he is advised by counsel and verily believes.

All of the foregoing facts, together with the facts mentioned in the affidavit of defense heretofore filed, deponent avers the defendant is prepared to prove on the trial of this case.

November 26, 1894, plaintiffs moved in open court for leave to withdraw the items in their statement of claim from items Nos. 2 to 12 inclusive, and that judgment be entered on the rule for judgment, to wit, liquidated.

| | |
|---|---:|
| Debt | $3,125.00 |
| Interest on $1,000 from Nov. 18, 1893 | 61.33 |
| Interest on $1.000 from Aug. 18, 1893 | 76.33 |
| 4 plates for upright shaft | 4.00 |
| | $3,266.66 |

| | | |
|---|---:|---:|
| Cr. cash | $1,000.00 | |
| Paid J. S. Campbell | 25.00 | |
| Paid J. S. Campbell | 10.00 | |
| Freight on P. R. R. car No. 15109 | 40.20 | |
| Freight on P. R. R. car No. 17103 | 37.20 | |
| | | $1,112.40 |
| Judgment for | | $2,154.26 |

Motion for leave to withdraw certain items in statement of claim and liquidation granted.

BY THE COURT.

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was above order.

*J. W. Lee,* for appellant.—The defendant is only required to state the facts with reasonable precision. The affidavit need not state the manner by which the facts will be proved, or the evidence by which they will be established: Bronson v. Silverman, 77 Pa. 94; Reznor v. Supplee, 1 W. N. C. 20; Moeck v. Littell, 82 Pa. 354; Kaufman v. Cooper Iron Co., 105 Pa. 537.

*J. S. Carmichael, R. W. Dunn* with him, for appellees.—The affidavit of defense does not specify the defects: Erie v. Butler, 120 Pa. 383.

Where machinery, or similar thing, is alleged to be defective, or workmanship inferior, the defects must be specifically

mentioned: Erie v. Butler, 120 Pa. 383 ; Pittsburg v. McConnell, 130 Pa. 465; Chain v. Hart, 140 Pa. 376 ; Leechburg v. Jennings Bros. & Co., 145 Pa. 559.

OPINION BY MR. CHIEF JUSTICE STERRETT, January 6, 1896 :

Pending the rule for judgment for want of a sufficient affidavit of defense to the plaintiffs' claim as presented in their statement, the defendant company filed a supplemental affidavit. It was afterwards suggested by the court that, if the plaintiffs so desired, leave would be granted them to withdraw all the items of their claim except the 1st, 13th, 14th and 15th, and the rule for judgment would be made absolute for the amount of these excepted items, less payments made on account thereof. Acting upon this suggestion they withdrew the 2d to 12th items of claim, inclusive, and judgment for want of sufficient affidavit of defense was accordingly entered against the defendant for $2,154.26, the residue of said four excepted items.

The only question presented by the assignments of error is whether the court was right in thus adjudging the affidavits of defense insufficient to carry the case to the jury, on either of said excepted items of claim.   The solution of that question depends on the averments of fact contained in the statement of claim and affidavits of defense respectively.   As will be seen by reference to the former, the·plaintiffs base their claim on the' contract, a copy of which is attached to and made part of their statement, coupled with an averment of performance thereof on their part.   After referring to the agreement, its purpose, etc., they say : " That the said machinery, etc., was furnished as provided by the contract, and put in place in such a workmanlike manner as to do the work required in crushing, washing, drying and making the sand ready for the market.   That not only the machinery, but also the labor required in placing the same, was of the best and in a workmanlike manner done, and was accepted by the managers of the said Penn Glass Sand Company after it had been properly tested by the plaintiffs. That thereupon the sum of $3,125 became due and owing plaintiffs, as is provided in said contract."   In immediate connection therewith, they admit payments on account amounting to $1,112.40, and as to the residue, $2,012.60, they aver that no part thereof has been paid, " and no further offsets are due defendants."

It may be conceded that plaintiffs' averments of performance, etc., of which the foregoing is the substance, would be sufficient to entitle them to judgment were it not for the fact—which seems to have been overlooked by the court below—that the defendant company in its affidavit of defense has so far substantially traversed and denied said averments as to put the plaintiffs to proof thereof before a jury. After enumerating in detail the things to be furnished by the plaintiffs, the contract specifically provides that "the said machinery, etc., including, and intending to include, all things necessary and needful for the setting up and furnishing a complete apparatus for crushing, washing, conveying and drying sand to the full capacity herein guaranteed by the said first parties, the parties of the first part agree to furnish all the above machinery and send one man to put up in complete working order and start said ma-. chinery. And the said first parties further agree to guaranty said grinding and washing machinery when put up to have a capacity of 8 tons per hour and the dryer to have a capacity of four tons per hour."

Without referring at length to the affidavits of defense, it is sufficient to say they expressly deny that plaintiffs substantially performed their contract, and aver that "the mill, plant or machinery" they agree to put up under the contract "was not erected or constructed in accordance with the terms of said contract, but in such an unworkmanlike and defective manner as to cause the defendant great loss and damage," etc. That the same was "so defectively constructed in workmanship and of such defective material as to render the said plant almost wholly useless for the purpose for which it was intended." After specifying wherein the plaintiffs failed to comply with their contract, etc., it is further averred, "that without taking into consideration the injury defendant sustained by reason of the defective work done by the mill, owing to faulty material and construction, and failure of the plaintiffs to perform their contract, the defendant sustained damages to more than the amount alleged to be due on the original contract," etc.

The defendant's affidavits contain all the elements of a substantial defense to the plaintiffs' claim, and the court erred in holding otherwise.

Judgment reversed and a procedendo awarded.